1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lance C. Behringer (SBN 315980)
(*Pro Hac Vice Pending*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Telephone: (310) 273-1230
*lbehringer@cz.law*

Todd M. Friedman (SBN 216752)
(*Pro Hac Vice Pending*)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (877) 619-8966
*tfriedman@toddflaw.com*

Christopher W. Wood (SBN 193955)          S. Amanda Marshall
(*Pro Hac Vice Pending*)                  Oregon Bar No. 953473
**DREYER BABICH BUCCOLA**                 **S. AMANDA MARSHALL LLC**
**WOOD CAMPORA, LLP**                     1318 NW Northup Street
20 Bicentennial Circle                    Portland, Oregon 92709
Sacramento, California 95826              Telephone: (503) 472-7190
Telephone: (916) 379-3500                *amanda@maclaw.law*
*cwood@dbbwc.com*
***Attorneys for Plaintiff and all others similarly situated***

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON – MEDFORD DIVISION

| | |
|---|---|
| TIM ARTOFF, individually on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>POLARIS INDUSTRIES, INC., a Delaware corporation; POLARIS SALES, INC., a Minnesota corporation; POLARIS INDUSTRIES, INC., a Minnesota corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1)  Violation of the Oregon Unlawful Trade Practices Act;**<br><br>**DEMAND FOR JURY TRIAL** |

1

## TABLE OF CONTENTS

2  PLAINTIFFS' COMPLAINT ....................................................................................... 1

3  I.      NATURE OF THE ACTION ........................................................................... 1

4  II.     UTVs SOLD BY POLARIS ........................................................................... 4

5  III.    JURISDICTION AND VENUE ........................................................................ 6

6  IV.     PARTIES ................................................................................................... 6

7  V.      FACTUAL ALLEGATIONS .......................................................................... 8

8          A.  *The Government Considers Regulations for UTVs* ........................... 8

9          B.  *The 1970s OSHA Regulation for ROPS on Farm Tractors* ............... 9

10         C.  *ROHVA, a Polaris-Controlled Entity, Adopts the*           *29 C.F.R. §*
               *1928.53 Test*       9

11         D.  *Polaris Cheats and None of the Class Vehicles Passes the 29 C.F.R. §*
12             *1928.53 Test*       9

13         E.  *Polaris Cheats by Improperly Distributing the Load and None of the Class*
14             *Vehicles Pass the 29 C.F.R. 1928.53 Side Load Test* ............................... 11

15         F.  *Plaintiff's Transactions* ............................................................... 12

16 VI.     CLASS ALLEGATIONS ............................................................................. 13

17 VII.    CAUSES OF ACTION ............................................................................... 17

18         FIRST CAUSE OF ACTION
           **Violation of the Oregon Unlawful Trade Practices Act**
19         **By Plaintiff Tim Artoff and the Oregon Class Against All Defendants** .............Error!
20         Bookmark not defined.

21 PRAYER FOR RELIEF ........................................................................................... 20

22 DEMAND FOR JURY TRIAL.................................................................…………21

1    Plaintiff TIM ARTOFF ("Plaintiff" or "Artoff"), individually and on behalf of all others

2    similarly situated, allege the following upon information and belief, based upon investigation of

3    counsel, published reports, and personal knowledge:

4    **I.        NATURE OF THE ACTION**

5        1.      Plaintiff brings this action against defendants POLARIS INDUSTRIES, INC.

6    (the Delaware corporation), POLARIS SALES, INC., POLARIS INDUSTRIES, INC. (the

7    Minnesota corporation and parent corporation of the other two Polaris defendants) (collectively,

8    "Defendants" or "Polaris") on behalf of all persons who purchased in Oregon since May 25,

9    2017 who purchased Polaris Utility Terrain Vehicles ("UTVs") (they are also called side-by-

10   sides) that Polaris claimed/advertised/marked/certified that the vehicles' rollover protection

11   system ("ROPS") complied with the department of Occupational Safety and Health

12   Administration ("OSHA") requirements/standards of 29 C.F.R. § 1928.53 (which is for

13   agricultural tractors).

14       2.      "Class Vehicles" is defined to include, but are not limited to the following

15   models: Polaris RZR XP 4 Turbo S; Polaris RZR XP 4 Turbo EPS, Polaris RZR PRO XP

16   Ultimate, Polaris RZR XP Turbo S; Polaris RZR XP Turbo EPS; Polaris RZR XP 4 1000 High

17   Lifter; Polaris RZR XP 4 Turbo S Velocity; Polaris RZR PRO XP Premium; Polaris RZR XP 4

18   1000 Premium; Polaris RZR XP 4 Turbo; Polaris RZR XP 4 Turbo Dynamix Edition; Polaris

19   RZR XP 4 Turbo Fox Edition; Polaris RZR XP 1000 Trails & Rocks; Polaris RZR PRO XP;

20   Polaris XP Turbo S Velocity; Polaris RZR XP 4 1000 Limited Edition; Polaris RZR XP 4 1000

21   EPS; Polaris RZR XP 4 1000 Ride Command; Polaris RZR XP 1000 EPS High Lifter; Polaris

22   RZR XP 1000 High Lifter; Polaris RZR XP 1000 EPS; Polaris RZR XP 1000 EPS LE; Polaris

23   RZR XP 1000 Ride Command; Polaris RZR XP 4 1000; Polaris RZR XP Turbo; Polaris RZR

24   XP Turbo Fox Edition; Polaris RZR XP Turbo Dynamix Edition; Polaris RZR XP Turbo S;

25   Polaris RZR XP 1000 Premium; Polaris RZR 4 1000; Polaris RZR XP 1000 Limited Edition;

26   Polaris RZR XP 1000; Polaris RZR S 1000; Polaris RZR S 1000 EPS; Polaris RZR S 900

27   Premium; Polaris RZR 900 Fox Edition; Polaris RZR S 900; Polaris RZR S 900 EPS; Polaris

28   RZR S4 900 EPS; Polaris RZR 900 Premium; Polaris RZR RS1; Polaris RZR 900; Polaris RZR

4 900 EPS LE; Polaris RZR 4 900 EPS; Polaris RZR 900 EPS Trail; Polaris RZR 900 EPS; Polaris RZR 900 EPS XC Edition; Polaris RZR 900 Polaris; Polaris RZR 4 800 EPS LE; Polaris RZR 4 800 EPS; Polaris RZR S 800 EPS; Polaris RZR S 800 LE; Polaris RZR S 800; Polaris RZR 800 EPS LE; Polaris RZR 800 EPS XC Edition; Polaris RZR 800 Polaris Pursuit; Polaris RZR 800; Polaris RZR 570 Premium; Polaris RZR 570 EPS Trail LE; Polaris RZR 570 EPS Trail; Polaris RZR 570 EPS LE; Polaris RZR 570 EPS; Polaris RZR 570; Polaris RZR S 570 570 EPS; Polaris RZR 170 EFI; Polaris RZR Turbo EPS; Polaris Ranger Crew XP 1000 EPS NorthStar Edition; Polaris Ranger XP 1000 NorthStar Edition; Polaris Ranger Crew XP 1000 EPS NorthStar HVAC Edition; Polaris Ranger XP 1000 EPS NorthStar HVAC Edition ; Polaris Ranger XP 1000 EPS NorthStar Edition; Polaris Ranger Crew XP 1000 High Lifter Edition; Polaris Ranger XP 1000 High Lifter Edition; Polaris Ranger Crew XP 1000 EPS High Lifter Edition; Polaris Ranger XP 1000 EPS High Lifter Edition; Polaris Ranger Crew XP 1000 EPS Back Country Edition; Polaris Ranger XP 1000 EPS Back Country Limited Edition; Polaris Ranger Crew XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger Crew XP 1000 Texas Edition; Polaris Ranger XP 1000 Texas Edition; Polaris Ranger Crew XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS Premium; Polaris Ranger XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS; Polaris Ranger XP 1000 EPS; Polaris Ranger XP 1000 EPS Ranch Edition; Polaris Ranger XP 1000 EPS Hunter Edition; Polaris Ranger XP 1000; Polaris Ranger Crew XP 900 EPS; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS Premium; Polaris Ranger Crew XP 900; Polaris Ranger XP 900; Polaris Ranger Crew XP 900-6 EPS; Polaris Ranger Crew XP 900-6; Polaris Ranger Crew XP 900-5 EPS; Polaris Ranger Crew XO 900-5; Polaris Ranger XP 900; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS High Lifter Edition; Polaris Ranger XP 900 EPS Hunter Deluxe Edition; Polaris Ranger XP 900 EPS Hunter Edition; Polaris Ranger XP 900 EPS NorthStar Edition; Polaris Ranger XP 900 EPS Trail Edition; Polaris Ranger XP 900 EPS LE; Polaris Ranger XP 900 EPS Browning LE; Polaris Ranger XP 900 Deluxe; Polaris Ranger XP 570 EPS; Polaris Ranger XP 570; Polaris Ranger Crew 1000 Premium; Polaris Ranger 1000 Premium; Polaris Ranger Crew 1000; Polaris Ranger 1000 EPS;

Polaris Ranger 1000; Polaris Ranger Crew 900 EPS; Polaris Ranger Crew 900 EPS LE; Polaris Ranger Crew 900; Polaris Ranger Crew 900-6 EPS; Polaris Ranger Crew 900-6; Polaris Ranger 800 EFI; Polaris Ranger 800 Midsize; Polaris Ranger 800 EPS LE; Polaris Ranger Crew 800 EPS; Polaris Ranger Crew 800; Polaris Ranger 800 EPS; Polaris Ranger Crew 570-6; Polaris Ranger Crew 570-4 Premium; Polaris Ranger Crew 570-4 EPS; Polaris Ranger Crew 570-4; Polaris Ranger Crew 570 EPS; Polaris Ranger Crew 570 EPS LE; Polaris Ranger Crew EPS 570 Full-Size; Polaris Ranger 570 EPS; Polaris Ranger 570 EPS Hunter Edition; Polaris Ranger Crew 570 EFI; Polaris Ranger 570 EFI; Polaris Ranger Crew 570 Full-Size; Polaris Ranger 570 Full-Size; Polaris Ranger Crew 570; Polaris Ranger 570; Polaris Ranger 500; Polaris Ranger 400; Polaris Ranger 150 EFI; Polaris Ranger 6X6; Polaris Ranger Diesel HST Deluxe; Polaris Ranger Diesel HST; Polaris Ranger Crew Diesel; Polaris Ranger Diesel; Polaris Ranger EV; Polaris Ranger EV LI-ION; Polaris Ranger ETX; Polaris General 4 1000 EPS Deluxe; Polaris General 4 1000; Polaris General 4 1000 EPS; Polaris General 4 1000 Ride Command Edition; Polaris General 1000 Deluxe; Polaris General 1000 Premium; Polaris General 1000; Polaris General 1000 Ride Command Edition; Polaris General 1000 Hunter Edition; Polaris General 1000 Limited Edition; Polaris General 1000 EPS; Polaris General 1000 EPS Deluxe; Polaris General 1000 EPS Hunter Edition; and Polaris General 1000 EPS Ride Command Edition.

3.      Polaris includes stickers like the following to suggest that their vehicles meet these OSHA requirements:



4.      The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

5.      None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tells all of their customers that their ROPS are safe because they meet this standard. They do not. Polaris has also staved off federal regulations by the U.S. Consumer

Product Safety Commission ("CPSC") in part by causing the adoption of newly created industry standards as part of the self-regulation revolution. Even after adopting farm tractor standards issued for worker safety on farms in the early 1970s, Polaris cheats and does not even meet those standards.

6.      Roof strength is a vital safety concern to consumers given the strong likelihood of UTVs rolling over. The failure to meet all applicable federal and state statutes, standards, regulations, and self-adopted regulations, including OSHA 29 C.F.R. § 1928.53 requirements is material information for consumers purchasing/leasing UTVs, such as the Class Vehicles.

7.      While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8.      Unless otherwise stated, Plaintiff alleges that any violations by Polaris were knowing and intentional, and that Polaris did not maintain procedures reasonably adapted to avoid any such violation.

9.      Unless otherwise indicated, the use of any defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that defendant's name.

## II.      UTVS SOLD BY POLARIS

10.     A UTV is a motorized vehicle with four or more low pressure tires designed for off-road use and intended by the manufacturer primarily for recreational use by one or more persons. UTVs are a relatively new product in the motorized off-road category, and their speed and design make them unique from all-terrain vehicles ("ATVs"). The main distinction is that an ATV is defined by federal law, in part as: any motorized, off-highway vehicle designed to travel on 3 or 4 wheels, having a seat designed to be straddled by the operator and handlebars for steering control. 15 U.S.C. § 2089(e)(1)(A).

11.     A UTV, unlike an ATV, has traditional seating like an automobile with bench or bucket seats, a restraint system, and is equipped with a steering wheel. UTVs are similar in design to golf carts with throttle and brake pedals. While golf carts travel approximately 15 miles per hour or less, UTVs such as the Polaris Rangers and Razors have top speeds well in

1   excess of 60 miles per hour. Polaris UTVs are powered by strong engines with up to 181

2   horsepower.

3       12.    The images depicted below are from Polaris' most recent earnings report and

4   website. They show the Rangers and Razors, which do not look like slow 1970s farm tractors:

 



24      13.    UTVs were introduced into the United States market in the late 1990s. In 1998,

25  only 2,000 UTVs were sold, all by one manufacturer. Polaris entered the market in 2000. By

26  2003, 20,000 UTVs were sold in the United States. That number then grew dramatically. There

27  was a 19% growth from calendar year 2006 over 2005 levels with approximately 255,000 UTVs

28  sold worldwide. In its most recent second quarter of 2019 earnings report, Polaris estimated

1  nearly 1 billion in gross sales in the quarter. Polaris possesses the top spot in the North

2  American market share ranks and has a three -fold lead on its nearest competitor.

3       14.    Polaris UTVs are sold at retail with an approximate median base price of around

4  $12,999.99 and sell at prices exceeding $20,000.00. The price is similar to entry and midsize

5  automobiles.

6  **III.   JURISDICTION AND VENUE**

7       15.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because plaintiff Tim Artoff

8  purchased in 2021 a new 20219 RZR Turbo S Velocity in Medford, Oregon. Plaintiff seeks

9  relief on behalf of an Oregon Class. Defendants' principal place of business is located in

10  Minnesota. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest and

11  costs. Therefore, both diversity jurisdiction and the damages threshold under the Class Action

12  Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

13       16.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the

14  conduct complained of herein occurred within this judicial district; and (ii)) Defendants

15  conducted business within this judicial district at all times relevant.

16       17.    Because Defendants conducted business within the State of Nevada at all time

17  relevant, personal jurisdiction is established.

18  **IV.   PARTIES**

19       18.    Plaintiff Tim Artoff ("Mitchell") is an individual who resides in the State of

20  Oregon. Plaintiff is a member of the putative Oregon Class defined herein.

21       19.    Plaintiff is informed and believes, and upon such information and belief allege

22  thereon, that defendant Polaris Industries, Inc. is a Delaware Corporation with its principal place

23  of business at 2100 Highway 55, Medina, Minnesota 55340-9770. Its agent for service of

24  process is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

25       20.    Plaintiff is informed and believes, and upon such information and belief alleges

26  thereon, that defendant Polaris Sales, Inc. is a Minnesota Corporation with its principal place of

27  business at 2100 Highway 55, Medina, Minnesota 55340-9770. Its agent for service of process

28  in California is CT Corporation System located at 818 West 7th Street, Suite 930, Los Angeles,

1    California 90017.

2        21.    Plaintiff is informed and believes, and upon such information and belief alleges

3    thereon, that defendant Polaris Industries, Inc. is a Minnesota Corporation with its principal

4    place of business at 2100 Highway 55, Medina, Minnesota 55340-9770. It is the parent

5    company of both defendant Polaris Industries, Inc. the Delaware Corporation and Polaris Sales,

6    Inc. Its agent for service of process is CT Corporation System Inc., 101 Date Street N., St. Paul,

7    Minnesota 55117-5603.

8        22.    Polaris maintains their largest and distribution center facility in California.

9    Polaris at all relevant times herein sold vehicles to members of the general public as well as

10   designing, testing, manufacturing, inspecting, distributing, recalling them, and warning and

11   instructing users on the safe use of the motor vehicles, including the subject vehicles, in

12   exchange for valuable consideration in Tehama County.

13       23.    The above-named Defendants, and their subsidiaries and agents, are collectively

14   referred to as "Defendants." The true names and capacities of the Defendants sued herein as

15   Doe Defendants 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue

16   such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is

17   legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to

18   amend the Complaint to reflect the true names and capacities of the Doe Defendants when such

19   identities become known.

20       24.    Plaintiff is informed and believes, and thereon allege, that at all relevant times,

21   each and every Defendant was acting as an agent and/or employee of each of the other

22   Defendants, and was the owner, agent, servant, joint venturer and employee, each of the other

23   and each was acting within the course and scope of its ownership, agency, service, joint venture

24   and employment with the full knowledge and consent of each of the other Defendants. Plaintiff

25   is informed and believes, and based thereon alleges, that each of the acts and/or omissions

26   complained of herein was made known to, and ratified by, each of the other Defendants.

27       25.    At all times mentioned herein, each and every Defendant was the successor of

28   the other and each assumes the responsibility for each other's acts and omissions.

1    **V.    FACTUAL ALLEGATIONS**

2        **A.    *The Government Considers Regulations for UTVs***

3        26.    Polaris UTVs are subject to product safety standards administered by the CPSC,

4    not the National Highway Traffic Safety Administration ("NHTSA"). UTVs are "consumer

5    products" that can be regulated by the CPSC via the Consumer Product Safety Act. 15 U.S.C. §

6    2052(a).

7        27.    On December 12, 2008, the CPSC met with representatives of the Recreational

8    Off-Highway Vehicle Association ("ROVHA") to discuss the development of a standard to be

9    certified by the American National Standards Institute ("ANSI"). The standards discussed, at

10    this time, involved stability standards. In June 2009, ROHVA sent over proposed voluntary

11    standards, including one for the ROPS. Ken D'Entremont and Mary McConnell attended the

12    meeting for Polaris. Paul Vitrano attended for ROHVA.

13        28.    In 2009, the CPSC began the process of considering regulatory action of UTVs.

14    (In CPSC nomenclature they are ROVs.) It issued a Notice of Proposed Rulemaking. The CPSC

15    noted that farm vehicles have maximum speeds of 25 mph or less, while UTVs at the time could

16    exceed 30 mph. The CPSC identified its databases of Injury and Potential Injury Incidents (IPII)

17    and In-Depth Investigation (INDP) for incidents between January 2003 and August 2009

18    involving 181 incidents, including 116 fatalities and 152 other injuries. The injuries included

19    deglovings, fractures and crushing injuries to victims' legs, feet, arms and hands, resulting in

20    amputations at times. 69% of the injuries occurred in rollover incidents.

21        29.    By April 2013, the CPSC was aware of 428 incidents resulting in 231 fatalities

22    and 388 other injuries. 150 of the 231 deaths were in rollover accidents.

23        **B.    *The 1970s OSHA Regulation for ROPS on Farm Tractors***

24        30.    In 1972, the U.S. Department of Labor concerned that "[t]ractor roll-overs have

25    been a major cause of employee injury and death on the farm" appointed the Standards

26    Advisory Committee on Agriculture to make a ROPS standard a priority.

27        31.    After the notice of proposed rulemaking notice period, the Department of Labor,

28    via OSHA promulgated 29 C.F.R. §§ 1928.51 (definitions), 1928.52 and 1928.53 (ROPS

strength test).

32.     The test for the ROPS strength involves forces applied to the ROPS and it measures the deflection caused by the force. If there is too much deflection the ROPS fails the tests. How much force is applied, according to the regulation depends on the tractor weight.

33.     Tractor weight is defined pursuant to 29 C.F.R. §§ 1928.51(a)(4) as:

> "Tractor weight" includes the protective frame or enclosure, all fuels, and other components required for normal use of the tractor. Ballast shall be added as necessary to achieve **a minimum total weight** of 110 lb. (50.0 kg.) per maximum power take-off horse power at the rated engine speed or the maximum, gross vehicle weight specified by the manufacturer, **whichever is the greatest**. From end weight shall be at least 25 percent of the tractor test weight. **In case power take-off horsepower is not available, 95 percent of net engine flywheel horsepower shall be used**.

34.     Thus, the weight to be tested is either the gross vehicle weight (about 2,000 to 2,400 pounds, or the 110 pounds multiplied by the maximum power take off horse power. The statute specifically indicates if the tractor is not one where you can measure the "power take off" horsepower, or PTO, then 95 percent of net engine flywheel horsepower is used.

**C.     *ROHVA, a Polaris-Controlled Entity, Adopts the 29 C.F.R. § 1928.53 Test***

35.     In order to avoid CPSC promulgating actual regulations, Polaris and the industry set up new standards with which they would comport. One of these was for the strength of the ROPS. This was done via ROHVA, which is controlled, in part by Polaris. ROHVA adopted the tractor ROPS test of 29 C.F.R. §§ 1928.51, *et seq.*, This was then made into an ANSI standard.

**D.     *Polaris Cheats and None of the Class Vehicles Passes the 29 C.F.R. § 1928.53 Test***

36.     The Class Vehicles consisting of 2015 to 2019 Polaris UTVs are believed to have horsepower ranging from approximately 168 horsepower to 68 horsepower for the smaller 2-door Rangers.

37.     For every model of Class Vehicles, Polaris tested the vehicles by the gross vehicle weight. Polaris intentionally refused to test at 110 pounds times either the maximum power take off horsepower or 95% of the net engine flywheel horsepower. For example, the

2019 RZR XP 4 Turbo is tested at 2750 pounds (the gross vehicle weight is 2713 pounds). It has 168 horsepower. 95% of 168 horsepower is 159.6. Rounding down, would be 159. So, 110 pounds multiplied by 159 is 17,490. The correct "W" or tractor weight in the test, should be 17,490 pounds. Polaris intentionally refused to use the correct tractor weight of approximately 17,490 pounds. Instead, it used 2,750 pounds. Polaris did not comply with the test. Polaris misled all Class members.

38.     The Polaris vehicles are lighter and have much stronger engines than farm tractors. Hence, their gross vehicle weights are comparatively lower, and 110 pounds times their PTO horsepower (or 95% of the net fly wheel horsepower) is going to be larger than that of the farm tractors.

39.     In fact, the gross vehicle weight, due the specifications of the Class Vehicles should never be used for the OSHA tests. 110 pounds times the PTO horsepower (or 95% of the net fly wheel horsepower) of each Class Vehicle is substantially greater than the gross vehicle weights.

40.     Not a single Class Vehicle has been tested using the proper Tractor Weight pursuant to 29 C.F.R. §§ 1928.51, *et seq.*, Polaris advertised and told the public that each and every Class Vehicle passed the OSHA 29 C.F.R. § 1928.53 test. None did.

41.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

42.     Polaris is believed to have digital computer models of the ROPS system that can be inputted into commercially available computer aided engineering programs. They test the ROPS system via an outside entity and using the computer aided engineering systems. It would be easy to ascertain whether the ROPS system meet the tests by inputting the correct Tractor Weight instead of the lower gross vehicle weight.

1

      **E.**     ***Polaris Cheats by Improperly Distributing the Load and None of the Class***

2

              ***Vehicles Pass the 29 C.F.R. 1928.53 Side Load Test***

3

      43.    The Class Vehicles' ROPS, being an integral part of each vehicle's enclosure,

4

are required to conform with the "side load" test as described in 29 C.F.R. §

5

1928.53(d)(2)(iii)(F). In essence, the integrity of the structure is tested by applying force to one

6

side of the vehicle. Specifically, the test requires that:

7

8

9

10

11

> When the protective-frame structures are an integral part of the enclosure, apply the side load according to Figure C-13, and record ***L*** and ***D*** simultaneously. Static side-load application shall be distributed uniformly on the frame over an area perpendicular to the direction of load application [...] **This side load shall be applied to the longitudinal side farthest from the point of rear-load application**.

12

29 C.F.R. § 1928.53(d)(2)(iii)(F).

13

14

15

16

17

18

19

20



FIGURE C-13 - SIDE LOAD APPLICATION.

21

22

      44.    Polaris cheats when it performs the side load test. Instead of following OSHA

23

guidelines and applying force to a single side, Polaris uses a tool commonly known as a "load

24

distributor" during the test to distribute the load parallel across the top of the enclosure to the

25

other side of the vehicle. The "load distributor" does as the name suggests and spreads out the

26

applied force. By doing so, force is applied to ***both*** sides of the enclosure and not the one side as

27

required by the OSHA standard.

28

      45.    Polaris purposefully uses the load distributor for every side load test to ensure

that every Class Vehicle "passes" the test.

46.    In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

**F.    *Plaintiff's Transaction***

47.    In 2021, Mitchell purchased a new 2021 RZR Turbo S Velocity in Oregon..

48.    Artoff saw and read the label/sticker on the 2021 RZR Turbo S similar to the picture listed below:



49.    Based on Artoff's employment experience as a peace officer, he understood that OSHA requirements were federal regulations pertaining to safety. Artoff read the sticker on the 2021 RZR Turbo S Velocity and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends.

50.    Artoff, in seeing and reading the sticker, relied on the language contained therein to purchase the 2021 RZR Turbo S Velocity. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2021 RZR Turbo S Velocity.

51.    The stickers placed on Plaintiff's Polaris vehicles as well as Class Vehicles and

are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

52.     None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because they meet this standard. They do not. **They do not test the with the proper engine power in determining the vehicle weight**.

53.     But for Defendants' misrepresentations, misleading and fraudulent statements, Plaintiffs would not have purchased the vehicles or would have paid substantially less for the vehicles than the purchase price of upwards of $20,000.00 each. Plaintiff did not receive the benefit of the bargain.

54.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

## VI.     CLASS ALLEGATIONS

55.     Plaintiff bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of themselves and all others similarly situated, as members of the proposed Class, per their state defined as follows.

56.     <u>Oregon Class (Artoff):</u> All persons in Oregon that purchased a Class Vehicle in the four years preceding the original filing in the Eastern District of California, or since May 25, 2017.

57.     Plaintiff does not know the exact number of persons in the Class, but believe them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.

58.     The identity of the individual members is ascertainable through Defendants'

1    and/or Defendants' agents' records or by public notice.

2        59.    There is a well-defined community of interest in the questions of law and fact

3    involved affecting the members of the Class.

4        60.    Plaintiff will fairly and adequately protect the interest of the Class.

5        61.    Plaintiff retained counsel experienced in consumer class action litigation.

6        62.    Plaintiff's claims are typical of the claims of the Class, which all arise from the

7    same operative facts involving Defendants' practices.

8        63.    A class action is a superior method for the fair and efficient adjudication of this

9    controversy.

10       64.    Class-wide damages are essential to induce Defendants to comply with the

11   federal and state laws alleged in the Complaint.

12       65.    Class members are unlikely to prosecute such claims on an individual basis since

13   the individual damages are small. Management of these claims is likely to present significantly

14   fewer difficulties than those presented in many class claims, e.g., securities fraud.

15       66.    Plaintiff and the Class seek injunctive relief against Defendants to preclude

16   Defendants from advertising that the Class Vehicles comply with OSHA 29 C.F.R. § 1928.53

17   until they meet the tests using the correct Tractor Weight as defined in 29 C.F.R. §

18   1928.51(a)(4).

19       67.    Plaintiff and the Class seek to enjoin Defendants' illegal business practices of

20   advertising and informing consumers that the Class Vehicles meet all applicable federal and

21   state statutes, standards, regulations, including OSHA requirements of 29 C.F.R § 1928.53,

22   when they in fact, do not.

23       68.    As such, Plaintiff and the Class seek public injunctive relief to prevent

24   Defendants from continuing with their unlawful business acts and practices as alleged herein to

25   ensure that Defendants do not continue to harm the general public by continuing to engage in

26   the unlawful business acts and practices as alleged herein.

27       69.    Plaintiff, individually, and on behalf of all Nevada consumers, seek individual,

28   representative, and public injunctive relief and any necessary order or judgments that will

CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;
DEMAND FOR JURY TRIAL
– 14 –

1    prevent Defendants from continuing with their unlawful business acts and practices as alleged

2    herein.

3           70.    Defendants acted on grounds generally applicable to the Class thereby making

4    appropriate final declaratory relief with respect to the Class as a whole.

5           71.    Members of the Class are likely to be unaware of their rights.

6           72.    Plaintiff contemplates providing notice to the putative class members by direct

7    mail in the form of a postcard and via publication.

8           73.    Plaintiff request certification of a hybrid class combining the elements of Fed. R.

9    Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

10          74.    This action is properly maintainable as a class action. This action satisfies the

11   numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

12          75.    **Numerosity**:  The proposed Class is so numerous that individual joinder of all

13   members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff does

14   not know the number of members in the Class, but believe the Class members number in the

15   thousands, if not more. Plaintiff alleges that the Class may be ascertained by the records

16   maintained by Defendants.

17          76.    Plaintiff and members of the Class were harmed by the acts of Defendants in at

18   least the following ways:  violations of the Oregon Unfair Trade Practices Act.

19          77.    **Commonality**: There are questions of law and fact common to Plaintiff and the

20   Class that predominate over any questions affecting only individual members of the Class.

21   These common questions of law and fact include, without limitation:

22          i.     Whether Defendants failed to test the Class Vehicles using the correct Tractor

23                 Weight as defined by 29 C.F.R. § 1928.51(a)(4);

24          ii.    Whether Defendants violated the Oregon Unlawful Trade Practices Act;

25          iii.   Whether Plaintiff and Class Members are entitled to statutory damages and/or

26                 injunctive relief.

27          78.    **Typicality**:  Plaintiff's claims are typical of the claims of members of the Class,

28   as Plaintiff was subject to the same common course of conduct by Defendants as all Class

1    members. The injuries to each member of the Class were caused directly by Defendants'

2    wrongful conduct as alleged herein.

3        79.    **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and

4    protect the interests of the Class. Plaintiff retained counsel with substantial experience in

5    handling complex class action litigation and litigation against product manufacturers. Plaintiff

6    and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and

7    have financial resources to do so.

8        80.    **Superiority of Class Action**: A class action is superior to other available

9    methods for the fair and efficient adjudication of the present controversy. Class members have

10    little interest in individually controlling the prosecution of separate actions because the

11    individual damage claims of each Class member are not substantial enough to warrant

12    individual filings. In sum, for many if not most Class members, a class action is the only

13    feasible mechanism that will allow them an opportunity for legal redress and justice. The

14    conduct of this action as a class action in this forum, with respect to some or all of the issues

15    presented herein, presents fewer management difficulties, conserves the resources of the parties

16    and of the court system, and protects the rights of each Class member.

17        81.    Moreover, individualized litigation would also present the potential for varying,

18    inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay

19    and expense to all parties and to the court system resulting from multiple trials of the same

20    factual issues. The adjudication of individual Class members' claims would also, as a practical

21    matter, be dispositive of the interests of other members not parties to the adjudication, and could

22    substantially impair or impede the ability of other Class members to protect their interests.

23        82.    Plaintiff and Class members have suffered and will continue to suffer harm as a

24    result of Defendants' unlawful and wrongful conduct. Defendants have acted, or refused to act,

25    on grounds generally applicable to the Class, thereby making appropriate final and injunctive

26    relief with regard to the Class members as a whole.

27    ///

28    ///

1    **VII.    CAUSES OF ACTION**

2                    **FIRST CAUSE OF ACTION**

3            **VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT,**

4                    **OR. REV. STAT. §§ 646.605, *ET SEQ.***

5            **(Against All Defendants on Behalf of Plaintiff Tim Artoff and**

6                            **the Oregon Class)**

7            83.    Plaintiff hereby incorporates by reference and re-alleges each and every

8    allegation set forth in each and every preceding paragraph of this Complaint, as though fully set

9    forth herein.

10           84.

11           85.    Artoff brings this cause of action on behalf of himself and the Oregon Class

12   against all Defendants.

13           86.    Polaris, Artoff and the Oregon Class are "persons" within the meaning of Or. Rev.

14   Stat. § 646.605(4).

15           87.    Polaris is engaged in "trade" or "commerce" within the meaning of 14 Or. Rev.

16   Stat. § 646.605(8).

17           88.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits unfair or

18   deceptive acts conducted in trade or commerce including but not limited to:

19                    • Or. Rev. Stat. § 646.608(1)(b) "Causes likelihood of confusion or of
                         misunderstandings as to the source, sponsorship, approval, or <u>certification</u> of
20                       real estate, <u>goods</u> or services";

21                    • Or. Rev. Stat. § 646.608(1)(c) "Causes likelihood of confusion or of
                         misunderstandings as to affiliation, connection, or association with, or
22                       <u>certification</u> by, another";

23
                      • Or. Rev. Stat. § 646.608(1)(e) "Representing that real estate, goods or services
24                       have sponsorship, approval, characteristics, ingredients, uses, benefits,
                         quantities or qualities that the real estate, goods or services do not have…";
25
                      • Or. Rev. Stat. § 646.608(1)(g) "Representing that real estate, goods or
26                       services are of a particular standard, quality, or grade, or that real estate or
                         goods are of a particular style or model, if the real estate, goods or services
27                       are of another. have sponsorship, approval, characteristics, ingredients, uses,
28                       benefits, quantities or qualities that the real estate, goods or services do not

have…";

- Or. Rev. Stat. § 646.608(1)(i) "Advertises real estate, good or services with intent not to provide the real estate, goods or services as advertised..." and

- Or. Rev. Stat. § 646.608(1)(u) "Engages in any other unfair or deceptive conduct in trade or commerce";

89.    Polaris is engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

90.    In 2021, Artoff purchased a 2021 RZR Turbo S Velocity in Medford, Oregon.

91.    Artoff saw and read the label/sticker on the 2021 RZR Turbo S Velocity pictured below:



92.    Based on Artoff's employment experience as a peace officer, he understood that OSHA requirements were federal regulations pertaining to safety. Artoff read the sticker on the 2021 RZR Turbo S Velocity and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends.

93.    Artoff, in seeing and reading the sticker, relied on the language contained therein to purchase the 2021 RZR Turbo S Velocity. If the sticker said

94.    that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2021 RZR Turbo S Velocity.

95.    None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because

1    they meet this standard. They do not.

2    96.    In failing to provide consumers accurate and truthful information about the true

3    nature and characteristics of the Class Vehicles pertaining to compliance with all applicable

4    federal and state statutes, standards, and regulations, including self-adopted regulations,

5    specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the

6    benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are

7    faced with a strong likelihood of serious injury or death.

8    97.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

9    deceive regulators and reasonable consumers, including Artoff and Oregon Class members,

10    about the true characteristics of the strength of the ROPS meant to protect passengers, as well as

11    the true value of the Class Vehicles.

12    98.    Plaintiffs and Oregon Class members suffered ascertainable loss and actual

13    damages as a direct and proximate result of Polaris' misrepresentations and its concealment of

14    and failure to disclose material information. Plaintiffs and the Oregon Class members who

15    purchased the Class Vehicles would not have purchased them at all and/or—if the Vehicles' true

16    nature had been disclosed and mitigated, and would have paid significantly less for them.

17    Plaintiffs also suffered diminished value of their vehicles, as well as diminished loss.

18    99.    Plaintiff and the Oregon Class members did not obtain the benefit of the bargain

19    from Polaris. Polaris had a duty to refrain from unfair and deceptive practices under the Oregon

20    UTPA in the course of business.

21    100.    Polaris' violations present a continuing risk to Artoff, the Oregon Class members

22    and the general public. Polaris' unlawful acts and practices complained of herein affect the public

23    interest.

24    101.    Pursuant to Or. Rev. Stat. § 646.638, Artoff and the Oregon Class members seek

25    an order enjoining Polaris' unfair and/or deceptive acts or practices, damages, punitive damages,

26    and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

27    ///

28    ///

1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief and judgment as follows:

1. Certifying the Class as requested herein;

2. Providing such further relief as may be just and proper.

3. Appointing Plaintiff and his counsel to represent the Class;

In addition, Plaintiff, and the Class Members pray for further judgment as follows:

4. Restitution of the funds improperly obtained by Defendants;

5. All compensatory or special damages;

6. Any and all statutory enhanced damages;

7. All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

8. For equitable and injunctive relief, including public injunctive relief; and

9. Any and all other relief that this Court deems just and proper.

Dated:  April 4, 2022                          Respectfully submitted,

                                    By:    */s/ Amanda S. Marshall*

                                            S. Amanda Marshall (OBN 953473)
                                            **S. AMANDA MARSHALL LLC**

                                            Lance C. Behringer (*Pro Hac Vice Pending*)
                                            **CARPENTER & ZUCKERMAN**

                                            Todd M. Friedman, Esq. (*Pro Hac Vice Pending*)
                                            Adrian Bacon, Esq. (*Pro Hac Vice Pending*)
                                            **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

                                            Christopher W. Wood (*Pro Hac Vice Pending*)
                                            **DREYER BABICH BUCCOLA**
                                            **WOOD CAMPORA, LLP**

                                            ***Attorneys for Plaintiff and all others similarly situated***

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands a trial by jury for all such triable claims.

3

4      Dated:  April 4, 2022                    Respectfully submitted,

5                                        By:   */s/ Amanda S. Marshall*
                                              S. Amanda Marshall (OBN 953473)
6                                             **S. AMANDA MARSHALL LLC**

7                                             Lance C. Behringer (*Pro Hac Vice Pending*)
                                              **CARPENTER & ZUCKERMAN**
8
                                              Todd M. Friedman, Esq. (*Pro Hac Vice Pending*)
9                                             Adrian Bacon, Esq. (*Pro Hac Vice Pending*)
                                              **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
10
                                              Christopher W. Wood (*Pro Hac Vice Pending*)
11                                            **DREYER BABICH BUCCOLA**
                                              **WOOD CAMPORA, LLP**
12
                                              ***Attorneys for Plaintiff and all others similarly situated***
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28